THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MYOUN L. SAWYER,

                Plaintiff,

vs.                                 Case No. 19-3171-SAC

LAURA HOWARD, et al.,

                Defendants.

**O R D E R**

In a prior order, this court screened plaintiff's complaint and directed plaintiff to file an amended complaint or show cause why plaintiff's complaint should not be dismissed for failure to state a claim. Doc. No. 3. Plaintiff, who is proceeding pro se, filed an amended complaint and a supplement. Doc. Nos. 4 and 5. This case is before the court to screen plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A. The court shall apply the standards the court summarized in the previous screening order. Doc. No. 3, pp. 1-3.

I. The amended complaint and supplement

The amended complaint is written on forms for bringing an action under 42 U.S.C. § 1983. Plaintiff's claims arise from his treatment at Larned State Hospital ("LSH") within the Sexual Predator Treatment Program ("SPTP"). Plaintiff was placed in the SPTP on August 19, 2011. Later he served a criminal sentence in

1

the custody of the Kansas Department of Corrections. He was returned to the SPTP at LSH on October 4, 2017.

Plaintiff names the following persons as defendants: Laura Howard, Secretary of the Kansas Department for Aging and Disability Services; Lesia Dipman, Superintendent of LSH; Marcus Herrera, Program Director of the SPTP at LSH; Haleigh Bennett, Program Manager of the SPTP at LSH; Marc Quillen, Clinical Director of the SPTP at LSH; Michael Burke, Chief Medical Officer at LSH; David Barnum, Clinical Director at LSH; Keri Applequist, Assistant Clinical Director of the SPTP at LSH; Holly E. Hertel, Registered Nurse at LSH; Tomas Garza, a doctor at LSH; Seth Osborn, a therapist at LSH; Jason Fisher, Chief of Security at LSH; Lucille Partlowloyall, a social worker specialist for the SPTP at LSH; and Erica Brown, a registered nurse at LSH.

In Count I, plaintiff alleges a "[m]assive conspiracy of mistreatment, discrimination and punitive conditions" and the use of "exaggerated rational[e] to justify the use of" physical restraint and seclusion in violation of the Fifth and Fourteenth Amendments to the Constitution and state laws and regulations. Doc. No. 4, p. 6. This appears to be a claim that plaintiff's substantive due process rights have been denied or that his equal protection rights have been denied.

Plaintiff alleges that he has been on continuous Individualized Person Management Plan ("IPMP") since February 24,

2

2019. The IPMP provides for confinement in plaintiff's room for all but one hour a day at "Stage 1" and, with good behavior, progress to "Stage 2" which permits 2 hours outside plaintiff's cell. Doc. No. 4-1, p. 21. In Count II, plaintiff alleges "[d]iscriminatory orders" written by a doctor and chief medical officer and deliberate indifference toward a serious medical need, in violation of the Constitution and state laws and regulations. In Count III, plaintiff alleges that he was the victim of battery on two separate occasions by unidentified staff members.

The supplement to the amended complaint alleges that defendants have violated plaintiff's right to free exercise of his religion by restricting his attendance and participation in religious worship services because plaintiff "fellowships and studies" with the Jehovah's Witnesses. The supplement also alleges retaliation.

## II. Count I

The exhibits to plaintiff's amended complaint show as the "Rationale for IPMP request," that on February 24, 2019, plaintiff was reported to have yelled, cursed and sexually threatened staff. He refused to allow a nurse to close a medication window while cursing and yelling. He was also reported to have exposed himself to staff multiple times. Doc. No. 4-1, p. 19.

LSH policy and procedure provide that "An IPMP can be used when a person demonstrates or threatens substantial injury to

3

others and routine psychiatric methods have been ineffective or are unlikely to be effective in reducing such risk." Id. at p. 4.

The IPMP reviewed plaintiff's "lengthy history of assaultive behaviors," his aggressive posturing toward staff, verbal threats, violent acts, public masturbation, propositioning staff, and throwing feces and urine. Id. at 19-20.

The IPMP indicated that medication, verbal de-escalation, individual therapy, physical exercise, peer support, mental health education and security assistance had been utilized to better control plaintiff's misbehavior. Id. at p. 20.

The IPMP stated that there were two initial stages. Id. at p. 21. Stage 1 limited plaintiff to his room except for a one hour break for shower, phone calls and exercise with no peers present. Stage 2 permitted a two hour break from confinement in his room. Plaintiff could reach Stage 2 after seven full days of 100% compliance with the rules and guidelines of Stage 1.

To discontinue the IPMP, plaintiff needed to exhibit "self control, anger management, de-escalation, lack of verbal or physical aggression, decrease in cursing or yelling and decrease in lewd, sexual comments or acts towards staff or peers." Id. at p. 21.

Plaintiff's exhibits indicate that in August 2019, plaintiff was still on Stage 1. Id. at p. 27. The exhibits also show that plaintiff had recently engaged in open masturbation, inappropriate

sexual comments to staff members, exposing himself, verbal abuse, threatening behavior toward peers and staff, screaming, and throwing feces. Id. at pp. 23 and 27. In October, plaintiff refused medication and refused to close his room's "wicket." He cursed, screamed, and verbally abused staff. Id. at pp. 34 and 38.

Although plaintiff was kept on the IPMP for several months, the exhibits indicate that he was evaluated periodically (at least every seven days) by a treatment team. Id. at pp. 8, 23, 27 and 36.

The Supreme Court has stated that involuntarily committed persons retain a "constitutionally protected interest in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." Youngberg v. Romeo, 457 U.S. 307, 324 (1982). These liberty interests are not absolute and must be balanced against the interests of the State. Id. at 320; see also Seling v. Young, 531 U.S. 250, 265 (2001)("due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed."). This court has previously held that there is no liberty interest in receiving the best or most qualified treatment or treatment that will ensure release. Beyer v. Deslauriers, 2019 WL 2409603 *3 (D.Kan. 6/7/2019) citing Burch v. Jordan, 2010 WL

5

5391569 *16 (D.Kan. 12/22/2010). "Treatment of a civilly committed person only violates due process rights if it represents 'a substantial departure from accepted professional judgment, practice or standards' to a degree that demonstrates that defendants 'actually did not base the decision on [professional] judgment.'" Id. at *4 (quoting Baker v. Keck, 2017 WL 3026143 *5 (D.Kan. 7/17/2017)).

This court has recognized that the two main purposes of the Kansas Sexually Violent Predators Act are to incapacitate sexually dangerous predators and to provide treatment. Chubb v. Keck, 2018 WL 4637236 *4 (D.Kan. 9/27/2018)(citing Kansas v. Hendricks, 521 U.S. 346, 366 (1997)). Sexually violent predators, "like other civil detainees and not unlike jail inmates, are unquestionably subject to security measures reasonably employed by jail and corrections officials." Kelner v. Harvin, 2010 WL 2817262 *2 (D.Kan. 7/16/2010). So, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting . . ." Bell v. Wolfish, 441 U.S. 520, 540 (1979).

Plaintiff uses general terms like "massive conspiracy of mistreatment," mistreatment, discrimination, punitive conditions, "exaggerated rational[e]", and "vindictive and politically motivated." These labels, however, do not state facts which

6

describe a plausible substantive due process violation wherein defendants deviated from professional judgment and standards to punish plaintiff by placing him in solitary confinement, as opposed to attempting to assure the safety of plaintiff's peers and staff. Therefore, the court concludes that Count I of the amended complaint fails to state a plausible substantive due process violation.

In the court's first screening order addressing the original complaint, the court concluded that plaintiff failed to state an equal protection claim because his allegations were not supported by specific facts which described different treatment to similarly situated individuals. Doc. No. 3, pp. 4-5. Plaintiff's amended complaint also fails to allege such facts.

Plaintiff's reference to a violation of state laws and regulations also fails to state a claim for violation of federal law. The state law provisions are not enforceable in an action brought under § 1983 which is concerned with the protection of "federally guaranteed rights." Wyatt v. Cole, 504 U.S. 158, 161 (1992). A violation of Kansas regulations does not equate with a denial of due process rights under the Constitution. As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide

correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." <u>Sandin v. Conner</u>, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

<u>Brown v. Wyoming Dept. of Corrections</u>, 234 Fed.Appx. 874, 878 (10th Cir. 2007).[1]

In summary, the court finds that Count I fails to allege a substantive due process or equal protection claim in violation of the Constitution.

## III. <u>Count II</u>

Count II alleges "discriminatory orders" written by a doctor and chief medical officer and "deliberate indifference towards a serious medical need." Doc. No. 4, p. 6. Plaintiff does not allege specific facts demonstrating a plausible claim of discrimination. In the amended complaint and the associated exhibits, plaintiff has not described medical orders which treated similarly situated persons differently. Plaintiff's exhibits do contain a grievance plaintiff wrote complaining that female staff were prohibited from treating plaintiff. Doc. 4-1, pp. 47-48.

---

[1] The court further notes that somewhat analogous cases have not found the conditions alleged by plaintiff to be an atypical and significant hardship in relation to normal prison conditions that would trigger procedural due process protections. Cf., <u>McAdams v. Wyoming Department of Corrections</u>, 561 Fed.Appx. 718, 721-22 (10th Cir. 2014)(placement in administrative segregation for more than two years is not an atypical and significant hardship); <u>Stallings v. Werholtz</u>, 492 Fed.Appx. 841, 845-46 (10th Cir. 2012)(placement in nondisciplinary administrative segregation for more than three years is not extreme); <u>Rezaq v. Nalley</u>, 677 F.3d 1001, 1013 (10th Cir. 2012)(extreme conditions in administrative segregation do not, on their own, constitute an atypical and significant hardship when compared to the ordinary incidents of prison life).

8

But, this complaint does not allege that plaintiff was denied treatment provided to other inmates under similar circumstances, only that he was denied treatment by <u>female</u> staff. There is no plausible claim of injury made by plaintiff and therefore, he has not stated a claim for relief. See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)(a plaintiff must allege an injury in fact which is concrete and particularized).

Plaintiff's exhibits also contain grievances complaining that the time he received his medication was rescheduled, that he was limited to receiving pain medication at meal times, and that he (rather than a nurse) was expected apply Icy-Hot and Lidocaine patches. These restrictions do not describe a plausible claim of deliberate indifference to a serious medical need. Plaintiff does not describe a serious medical need. Nor does he state facts showing serious harm from the time changes in administering medication or the change requiring that plaintiff administer certain salves or patches. Such facts must be alleged to demonstrate an Eighth Amendment claim (see <u>Al-Turki v. Robinson</u>, 762 F.3d 1188, 1192-93 (10th Cir. 2014)) which is analogous to what plaintiff must show to prove a constitutional violation as a civil detainee. See <u>Charles v. Orange County</u>, 925 F.3d 73, 85 (2nd Cir. 2019).

IV. Count III

In Count III plaintiff alleges that he was battered by a "staff member" on April 13, 2019, August 25, 2019 and October 17, 2017. The exhibits to the amended complaint indicate that a different staff member was involved in each alleged incident. Plaintiff has stated that none of the staff members are named as defendants. Doc. No. 7, p. 2. Plaintiff does not allege facts showing that the persons he has named as defendants are responsible for the alleged batteries. Personal participation in a constitutional violation is essential for individual liability under 42 U.S.C. § 1983. Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). Liability may not be based upon a defendant's supervisory position unless there is some "affirmative link" between the constitutional deprivation and the supervisor's exercise of control or direction or his failure to supervise. Id. Plaintiff has failed to state a claim in Count III because he has failed to allege that a named defendant caused plaintiff's alleged injuries during the incidents he has identified.

V. Supplement to the amended complaint

Plaintiff's "supplemental civil rights complaint" (Doc. No. 5) alleges that plaintiff has been denied the free exercise of religion and discriminated against because he follows the Jehovah's Witnesses. Retaliation is also mentioned.

To establish a free exercise violation under the First Amendment, a prisoner must show that a governmental entity burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith, without any justification "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). "[T]he standard for reviewing the validity of a prison regulation or policy affecting a prisoner's fundamental constitutional right, such as the free exercise of his or her religion, is this: 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1209 (10th Cir. 1999) (quoting, 482 U.S. 78, 89 (1987)). Whether this standard or a less burdensome standard is applicable to civil detainees, the court finds that plaintiff has failed to state a claim.

Plaintiff must allege facts showing that defendants substantially burdened his practice of his religion. See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Ohno v. Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013)(internal

11

quotation marks and alterations omitted). Plaintiff's allegations of religious discrimination or the denial of his right to practice his religion are too conclusory to describe a plausible claim. Plaintiff does not identify when he was prevented, how he was prevented, or who prevented plaintiff from practicing his religious beliefs. Cf., Field v. Beneze, 2013 WL 3898880 *13 (D.Colo. 7/29/2013)(allegation that religious materials were confiscated significantly hindering religious practice, is too threadbare and insufficient under Iqbal); Santana v. Aviles, 2011 WL 6002260 *5 (D.N.J. 11/30/2011)(mere assertion of denial of right to practice religious freedom to attend church service is insufficient under the Iqbal pleading standard).

Plaintiff's retaliation claim is also deficiently pleaded. Plaintiff suggests that he has been retaliated against for filing a state court habeas petition for relief on December 18, 2017. Doc. No. 5, p. 3. An attached grievance states that defendant Bennett instituted new practices and procedures to punish and harass plaintiff. These procedures: required plaintiff to go through his legal and religious materials during his limited recreation time; denied him food or snacks in his room; denied him bowls to store condiments; and limited his free access to the pantry, to drinking cups, and to the refrigerator. This was allegedly different from the treatment of other patients. "Prison officials may not retaliate against or harass an inmate because of

the inmate's exercise of his right to access to the courts." Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). However, an "inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted). "[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." Frazier v. Dubois, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

To state a First Amendment retaliation claim, plaintiff must allege: 1) he engaged in constitutionally protected activity; 2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant's adverse action was substantially motivated as a response to his constitutionally protected activity. Gray v. Geo Group, Inc., 727 Fed.Appx. 940, 946 (10th Cir. 2018)(citing Mocek v. City of Albuquerque, 813 F.3d 912, 930 (10th Cir. 2015)). A plaintiff may be able to establish that a defendant's actions were substantially motivated by protected activity where the allegations show 1) the defendant was aware of his protected activity, 2) the protected activity complained of the defendant's actions, and 3) the alleged retaliatory act "was in close temporal proximity to the protected activity." Allen v. Avance, 491 Fed.Appx. 1, 6(10th Cir.

13

2012)(quoting Gee v. Pacheco, 627 F.3d 1178, 1189 (10th Cir. 2010)). Temporal proximity between protected activity and a challenged prison action, however, does not in itself demonstrate the causal nexus for a retaliation claim. See Leek v. Miller, 698 Fed.Appx. 922, 926 (10th Cir. 2017); Dawson v. Audet, 636 Fed.Appx. 753, 758 (10th Cir. 2016)(rarely sufficient); Strope v. Cummings, 381 Fed.Appx. 878, 883 (10th Cir. 2010); Friedman v. Kennard, 248 Fed.Appx. 918, 922 (10th Cir. 2007).

Here, plaintiff has not alleged facts showing that defendants were aware of his protected activity when the alleged adverse actions were taken. Nor has he alleged facts showing that the alleged adverse actions would chill of person of ordinary firmness from continuing with the constitutionally protected activity. See Rocha v. Zavaras, 443 Fed.Appx. 316, 319 (10th Cir. 2011)(actions that among other things limited plaintiff to standard recreation activities, caused plaintiff to be called last to eat, and restricted his purchases from the canteen, would not chill a person of ordinary firmness from filing complaints); Waterman v. Tippie, 2019 WL 687894 *3-4 (D.Kan. 2/19/2019)(service of four meals with inadequate calories is too de minimus to chill a person of ordinary firmness); Matson v. Hrabe, 2014 WL 273187 *10 (D.Kan. 1/23/2014)(transfer from a single-person cell to a double-person cell in general population unit with the same incentive level was

not chilling even though there was substantially less space and less comfortable living conditions).

For the above-stated reasons, the court finds that plaintiff's allegations in the supplement to the complaint fail to state a claim for relief.

VI. Conclusion

The court finds that plaintiff's amended complaint and supplement (Doc. Nos. 4 and 5) fail to state a claim and directs that this action be dismissed without prejudice. Plaintiff's motions for leave to proceed in forma pauperis (Doc. Nos. 2 and 6) and motion for punitive damages (Doc. No. 7) shall be considered moot.

**IT IS SO ORDERED.**

Dated this 21st day of November, 2019, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge